UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

ANTHONY GIANNASCA,

        Debtor

Chapter 11
Case No. 11-19499-FJB

## CHAPTER 11 PLAN OF REORGANIZATION

    Anthony Giannasca, the Debtor, hereby proposes the following Chapter 11 Plan of Reorganization (the "Plan") to her creditors pursuance to Section 1121(a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. 1121 (a)) (the "Bankruptcy Code").

## ARTICLE I. DEFINITIONS

    1.1    <u>Administrative Claim</u> shall mean the costs and expenses of administration of the Chapter 11 case as allowed under Section 503(b) of the Code, including, without limitation, any actual, necessary costs and expenses of preserving or operating the Debtor's estate, and all allowances of compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330 of the Code.

    1.2    <u>Allowed Claim</u> shall mean any Claim proof which was filed on or before the Bar Date, or that has been, or hereafter is, listed by either Debtor-in-possession as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or an order of the Court, or as to which any objection has been determined by an order or judgment that is no longer subject to appeal or certiorari proceeding, and as to which no appeal or certiorari proceeding is pending, after giving effect to any such order or judgment reducing or modifying such Claim.

    Unless other specified and in accordance with applicable laws, no allowed secured Claim shall include any component of interest on the principal amount of such Claim, as the Debtor is insolvent.

    1.3    <u>Bar Date</u> shall mean the last day for filing claims in this proceeding, fixed by this Court pursuant to Rule 3003(c)(3) of the Rules of Bankruptcy Procedure.

    1.4    <u>Claim</u>  shall mean any claim of whatever character against the Debtor, whether or not such claim is: provable under Section 502 of the Bankruptcy Code; reduced to judgment; liquidated or unliquidated; secured or unsecured; fixed or contingent; matured or unmatured;

disputed or undisputed; a legal claim or a claim to an equitable remedy for breach of performance, if such breach gives rise to a right to payment.

    1.5    <u>Claimant</u> shall mean any Person having a Claim against the Debtor that arose on or before the Filing Date or a Claim against the Debtor's estate of a kind of specified in Section 502(g), (h) or (i) of the Code.

    1.6    <u>Priority Claimant</u> shall mean the holder of an Allowed Priority Claim.

    1.7    <u>Class</u> shall mean the category of holders of Claims that are substantially similar to the other Claims in such category.

    1.8    <u>Code</u> means the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and as thereafter amended.

    1.9    <u>Confirmation</u> shall mean the date on which the Debtor's proposed Plan of Reorganization is confirmed by order of the Bankruptcy Court.

    1.10    <u>Court</u> shall mean the United States Bankruptcy Court for the District of Massachusetts including the United States Bankruptcy Judge presiding therein.

    1.11    <u>Creditor</u> shall mean holder of an Allowed Claim.

    1.12    <u>Debtor</u> shall mean Anthony Giannasca.

    1.121    <u>Disbursing Agent</u> shall mean Michael Van Dam, Van Dam Law LLP, counsel for the Debtor.

    1.13.    <u>Effective Date</u> shall mean not earlier than 30 days following the first business day following the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the date upon which all appeals have been exhausted and the Plan may be put into effect, whichever is later. For purposes of distribution other than to creditors who have received payment of Adequate Protection during the pre-confirmation period, the phrase "paid upon the Effective Date" shall mean on the Effective Date or within a reasonable period thereafter so as to allow the writing and mailing of dividend checks. For the creditors who have received payment of Adequate Protection, monthly debt service shall commence on the 5th day of the first month following the payment of the final Adequate Protection which occurred before the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the 5th day of the month after all appeals have been exhausted and the Plan may be put into effect, which is later. Payment of Adequate Protection shall not be suspended during the appeal period.

    1.14    <u>Executory Contract</u> shall mean any pre-petition executory contract or unexpired leases of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

1.15    Fair Market Value shall mean the most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms for which the specified property right should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

1.16    Filing Date shall mean November 29, 2011, the date on which the Debtor filed the voluntary petition.

1.17    Final Order shall mean an order judgment or decree of the Bankruptcy Court, which order shall not have been reversed, stayed, modified or amended and the time to appeal or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with Rule 8002 of the Rules of Bankruptcy Procedure and any applicable local procedural rule.

1.18    Lien shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, and statutory lien as defined in 11 U.S.C. Section 101.

1.19    Liquidation Value shall mean the price that an owner is compelled to accept when a property must be sold without reasonable market exposure.

1.20    Plan shall mean the Plan of Reorganization, either in its present form or as it may be amended from time to time.

1.21    Pro Rata shall mean the same proportion that a Claimant in a particular Class bears to the aggregate amount of all Claims in that Class.

1.22    Secured Claim shall mean any Allowed Claim with respect to which a Security Interest is held in or against any property of the Debtor's estate, to the extent of the value of such Creditor's Interest in the estate's interest in such property. If the value of such creditor's interest is less than the amount of the Allowed Claim held by it, then such Creditor shall hold an Unsecured Claim for such deficiency amount.

1.23    Secured Creditor shall mean any Creditor holding a Secured Claim.

1.24    Security Interest shall mean a lien (as such term is defined in Section 101(31) of the Code) on any property of the Debtor's estate.

1.25    Unimpaired Creditor shall mean a Creditor whose interest is not materially and adversely affected by this Plan. In the event of controversy, the Court shall, after hearing and upon notice, determine whether any Creditor or class of Creditors is an Unimpaired Creditor.

**ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS**

2.01    Class 1.        Class 1 consists of the claim of One West Bank, FSB secured by a first mortgage 9 Joseph Street, Medford Massachusetts to the extent allowed as a secured claim under § 506 of the Code.

2.02    Class 2         Class 2 consists of the claim of One West Bank, FSB secured by a first mortgage 16-18 Joseph Street, Medford Massachusetts to the extent allowed as a secured claim under § 506 of the Code.

2.03    Class 3         Class 3 consists of all unsecured claims allowed under § 502 of the Code.

2.04    Class 4         Class 4 consists of the interests of the Debtor in the property of the estate.

## ARTICLE III. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND FEES OF U.S. TRUSTEE

A.    Payment of Administrative Claims

Administrative Claims will be paid in cash, in full, on the later of the Effective Date or the date they are allowed by an Order of the Bankruptcy Court. Ordinary trade debt incurred by the Debtor in the course of the Chapter 11 case will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and her trade creditors. The payments contemplated by the Plan will be conclusively deemed to constitute full satisfaction of Allowed Administrative Claims.

Administrative Claims include post-petition fees and expenses allowed to professionals employed upon Court authority to render services to the Debtor during the course of the Chapter 11 case.

In this case, the sole professional employed by the Debtor was Michael Van Dam, Van Dam Law LLP as counsel to the Debtor. In order to be compensated, all professionals will have to apply to the Court for compensation and they will be paid that amount which the Court allows. It is estimated that administrative fees in the Debtor's case may be approximately $20,000.00 but that is only an estimate by the Debtor and actual fees may be higher than as represented.

B.    Priority Tax Claims: Priority Tax Claims: The Allowed Amount of any unsecured claim of a governmental unit entitled to priority under §507(a)(8) of the Code are as follows:

1. Internal Revenue Service        $23,765.57 (POC # 7)
   Internal Revenue Service        $3,925 (FY 2011)
2. Mass. Dept. of Revenue:         $9,903.92 (POC # 9)
   Mass. Dept. of Revenue          $1,725 (FY 2011)
   TOTAL                           $39,319.49

4

The Priority Claims will be paid as follows:

- **At Effective Date**:  Internal Revenue Service  $13,845.29
  Mass. Dept. of Revenue:  $5,814.46
  $19,299.75

- **Balance**:
  Internal Revenue Service: The Debtor shall pay $338.83 per month (inclusive of 4% interest) for forty-four (44) months from the Effective Date.

  Mass. Department of Revenue: The Debtor shall pay $142.29 per month (inclusive of 4% interest) for forty-four (44) months from the Effective Date.

  Total Monthly payment for forty-four (44) months: **$481.12**

C. <u>Fees of the United States Trustee</u>

The Debtor will be responsible for timely payment of quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6) until its case is converted to chapter 7, closed or dismissed. After confirmation, the Debtor will serve the United States Trustee with a quarterly disbursement report for each quarter (or portion thereof) so long as the case is open. The quarterly report shall be due fifteen days after the end of the calendar quarter. The quarterly financial report shall include the following:

(1) a statement of all disbursements made during the course of the quarter, by month, whether or not pursuant to the plan;

(2) a summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan, if any;

(3) a description of any other factors which may materially affect the Debtor's ability to complete its obligations under the plan; and

(4) an estimated date when an application for final decree will be filed with the court (in the case of the final quarterly report, the date the decree was filed).

Immediately after Plan Confirmation, the Debtor shall move to administratively close the case. Upon achieving substantial consummation of the Plan the Debtor (or the Disbursing Agent) shall file a motion to reopen the case in order to enter a motion for final decree and upon completion of all payments provided for in the Plan move to seek entry of a discharge using a procedure substantially similar to that set forth in M.L.B.R. 13-22.

In order to address the Court's concern as to the monitoring of the Debtor's compliance with payment requirements set forth in the Plan, the Disbursing Agent has agreed to file the

5

appropriate notice of default with the Court in the event the Debtor falls more than three months behind in making payments pursuant to the Plan.

## ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

**9 Joseph Street, Medford, Massachusetts (Residence)**

Class 1: Claims of One West Bank, FSB. Class 1 consists of the claim of One West Bank, FSB ("One West"). The claim is secured by a first mortgage on 9 Joseph Street, Medford, Massachusetts. The property has a value of $225,000. *See* Exhibit A. At the Petition Date, One West is owed $402,039.74 (POC #2).

The Debtor intends to surrender this property from the bankruptcy estate. Notwithstanding, the Debtor intends to seek a loan modification from One West. One West may be entitled to file a deficiency claim which would be treated under Class 3

Class 1 is impaired.

**16-18 Joseph Street, Medford, Massachusetts**

Class 2: Claims of One West Bank, FSB. Class 2 consists of the claim of One West Bank, FSB ("OW"). The claim is secured by a first mortgage 16-18 Joseph Street, Medford Massachusetts. *See* Exhibit A. At the Petition Date, OW is owed $615,346.91 (POC# 3). The property has a value of $407,000.

The claim of OW shall be modified as follows: (a) Payment of the secured portion of Class 2 shall be in accordance with existing promissory note from the Debtor to OW, modified to extend the maturity date of the loan to 30 years from the Effective Date, fix the principal loan amount to $407,000, to fix the interest rate to 5.0% per annum fixed (not variable) and to fix the monthly principal and interest payment under the note to $2,184.86. This monthly payment shall be paid directly to OW. Further, on an ongoing basis, the real estate taxes and insurance shall be escrowed by OW.

The Class 2 Claim holder shall retain its existing lien to secure the secured portion of its Claim. Upon the Effective Date, the mortgage of OW shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification. The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default. OW shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date. The unsecured portion of the claim of $208,346.91 shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 3 below.

Class 2 is impaired.

Class 3: Unsecured Claims.  Class 3 consists of (i) wholly unsecured claims of:

Beacon Electrical $7,456.11
Century Bank and Trust $58,546.81
Real Time Resolutions, Inc. $144,617.50 (POC # 6);

(ii) Allowed Unsecured Claims, as scheduled or as filed and allowed by the Court, against the Debtor of whatever kind or nature which are not included in any other Class hereof totaling $138,753.06; (iii) undersecured claims of secured creditors set forth above in the amount of $208,346.91; and (iv) claims based on the rejection of the executory contracts or unexpired leases and claims for damages to person or property based on strict liability, negligence, or breach of a warranty, express or implied, relative to services rendered or products delivered by the Debtor.  These amounts total **$557,720** and holders of Class claims will receive on account of the Allowed amount of their claims a pro rata share of $5,000.00 on the Effective Date and $5,000.00 on each of the next four (4) anniversary dates of the Effective Date.  In sum, holders of Class 3 claims will receive in five (5) payments over the five (5) years from the Effective Date a pro rata share of a pool of cash totaling **$25,000 or 4.5%**.

Class 3 is impaired.

Class 4: The interests of the Debtor in property of the estate.  The property of the estate shall vest in the Debtor upon confirmation.

Class 4 is unimpaired.

## ARTICLE V. ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not otherwise expressly assumed by motion or as otherwise stated herein.

The Debtor reserves the right to file a motion or amend this Plan to reject any contracts and leases found to be executory prior to or after Confirmation as provided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the Bankruptcy Code).  If any party to an executory contact or unexpired lease which is deemed assumed pursuant to the Plan objects to such assumption, the Bankruptcy Court may conduct a hearing on such objections on any date which is either mutually agreeable to the parties or fixed by the Bankruptcy Court.  All payments to cure defaults that may be required by Section 365(b)(1) of the Bankruptcy Code will be made by the Debtor.  In the event of a dispute regarding the amount of any such payments or the ability of the Debtor to provide for adequate assurance of future performance, the Debtor will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute.

All proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within thirty (30) days from and after the date of entry of an order of the Bankruptcy Court approving such rejection or such Claims will be barred.  A creditor whose claims arise from rejection of executory contracts and unexpired leases will be treated as an unsecured creditor.

## ARTICLE VII. MEANS FOR EFFECTUATING THE PLAN

7.01    Prior to the commencement of the hearing(s) on Plan confirmation, the Disbursing Agent will receive from the Debtor into the Creditor Distribution Fund an amount equal to fund payments to be made on the Effective Date stated below.

The source of payment in order to have cash on hand at the Effective Date shall be from cash accumulated by the Debtor during the pendency of this Chapter 11 case.  These funds will be disbursed on the Effective Date by the Disbursing Agent as follows:

| | |
|---|---:|
| Priority Claims | $33,669.49 |
| Class 3 | <u>$5,000.00</u> |
| **TOTAL** | **$38,669.49** |

The total unsecured amount under Class 3 totaling $557,720 will receive on account of the Allowed amount of their claims a pro rata share of $5,000.00 on the Effective Date and $5,000.00 on each of the next four (4) anniversary dates of the Effective Date.  In sum, holders of Class 3 claims will receive in five (5) payments over the five (5) years from the Effective Date a pro rata share of a pool of cash totaling $25,000.00 or 4.5%.

All quarterly disbursement fees, arising under 23 U.S.C. §1930 ("Quarterly Fees"), accrued prior to the confirmation shall be paid in full, on or before the date of confirmation of the Debtor's Plan, by the Debtor.  All Quarterly Fees which accrue post-confirmation shall be paid in full on a timely basis by the Debtor prior to the Debtor's case being closed, converted, or dismissed.

7.02     Exemption from Transfer Taxes.  In accordance with Section 1146(c) of the Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any transfer of assets contemplated by this Plan, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan, or the vesting, re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in impanation of, or as contemplated by this Plan; (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with this Plan, the issuance, renewal, modification or security of indebtedness by such means, including, without limitation, the recording or filing of any of the documents related to any debt financing; and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp fee, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or government assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under this Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deeds stamps, transfer tax, intangible tax or similar tax.

7.03     Execution of Necessary Documents.  Confirmation of this Plan shall constitute authorization for the Debtor and the Reorganized Debtor to execute such documents, instruments and agreements as are necessary to effectuate the terms of this Plan.

7.04     Setoff.  For purposes of determining the availability of the right of set-off under Section 553 of the Code, the Debtor shall be treated as a separate entity so that, subject to the other provisions of Section 553 of the Code, debts are due to the Debtor may not be set-off against the debtor of any other debtor.

7.05     Amendment of Documents.  As of the Effective Date, all pre-Confirmation Date documents and agreements (whether written or oral) between the Debtor and any party, including, without limitation, any instruments, contracts, notes, mortgages, deeds of trust, assignments, bills of sale, leases, property settlement agreements and purchase and sale agreements, shall be deemed to be amended as necessary to effectuate and conform to the terms of this Plan.  To the extent that there is any inconsistency between this Plan and any such documents and agreements, the terms of this Plan shall control.

7.06     Preservation of Causes of Action.  Except as provided herein, an unless expressly waived, relinquished, exculpated, released, compromised or settled in this Plan, the Confirmation Order, or in any contract, instrument, release or other agreement entered into delivered in connection with this Plan, the Reorganized Debtor will exclusively retain and may enforce, an the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(A) of the Code, any Claims, demands, rights and causes of action that the Debtor or her Estate may hold against any person or entity.  No preclusion doctrine, including, without limitation, the doctrines of *res judicata*, colatteral estoppel, issue preclusion, claim preclusion, estoppels

# ARTICLE VIII. PROVISIONS FOR THE EXECUTION OF THE PLAN

    1.    In order to participate in the distribution under this Plan, a proof of claim must be filed with the Bankruptcy Court on or before the bar date established by the Court unless scheduled by the Debtor as liquidated in amount, not disputed and not contingent in which event the claim will be allowed as scheduled.

    2.    "Confirmation" shall mean the date upon which the Bankruptcy Court enters an order confirming the Plan under Section 1129 of the Bankruptcy Code.

    3.    "Effective Date" shall mean not earlier than 30 days following the first business day following the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the date upon which all appeals have been exhausted and the Plan may be put into effect, whichever is later. For purposes of distribution hereunder the phrase "paid upon the Effective Date" shall mean on the Effective Date or within a reasonable period thereafter so as to allow the writing and mailing of dividend checks such order is pending, whichever is later.

    4.    As of the Confirmation, the property of the estate created under Section 541 of the Bankruptcy Code shall be vested in the Debtor free and clear of any and all claims except as otherwise provided in the Disclosure Statement and Plan of Reorganization or in the order of the Bankruptcy Court confirming the Plan.

    5.    A Chapter 11 Plan of Reorganization by an individual debtor may be modified at any time after confirmation before completion of payments regardless if substantially consummated, for the propose of modifying the amount, duration or distribution of plan payments; 11 U.S.C. §1127(e).

    6.    The Debtor or Disbursing Agent shall notify the Court by motion should the Debtor fail to make payments under the Plan or otherwise default.

    7.    Upon confirmation of the Plan, the Debtor or the Disbursing Agent shall file a Motion to administratively close this Case, and, thereafter, upon completion of the payments due under the Plan, the Debtor or Disbursing Agent shall move to reopen the Case in order to seek a discharge.

    8.    Pursuant to 11 U.S.C. §1141(d)(5)(A), upon completion of all payments due under the Plan, the Court shall grant the Debtor a discharge of any and all debts or Claims against the Debtor that arose at any time before the entry of the confirmation order, including, but not limited to, all principal and interest, whether accrued before or after the Filing Date, pursuant to §1141(d). The discharge shall be effective as to each Claim, regardless of whether a Proof of Claim therefore was filed, whether the Claim is an Allowed Claim, or whether the

holder thereof votes to accept the Plan. Pursuant to 11 U.S.C. §1141(d)(2), the discharge shall not discharge the Debtor from any debt excepted from discharge under §523 of the Code.

9. Confirmation of the Plan will act as an injunction against creditors seeking to collect upon their claims for so long as the Debtor remains current under the Plan.

### ARTICLE IX. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of these cases pursuant to the provisions of Chapter 11 of the Code, until the final allowance or disallowance of all claims affected by the Plan, and, in addition shall retain jurisdiction to determine the following matters:

1. In order to participate in the distribution under this Plan, a Proof of Claim must have been filed with the Bankruptcy Court on or before the bar date established by the Court unless scheduled by the Debtor as liquidated in amount, not disputed and not contingent in which event the claim will be allowed as scheduled.

2. The Plan provides the Court's retention of jurisdiction for specified purposes regardless of the entry of a final decree closing the Chapter 11 case.

3. The Plan shall provide for the Court's retention of jurisdiction to determine disputes over defaults alleged under the Plan provisions.

4. The Court shall retain jurisdiction of these cases pursuant to the provisions of Chapter 11 of the Code, until the final allowance or disallowance of all claims affected by the Plan, and, in addition shall retain jurisdiction to determine the following matters:

5. To enable the Debtor to consummate the Plan and to resolve any dispute thereto including those creditors whose claims are scheduled by the Debtor as disputed or which amounts due and payable are disputed;

6. To enable the Debtor to consummate any and all proceeding which they may bring prior to the entry of the order of confirmation to set aside liens or encumbrances, and to record any preferences, transfers, assets or damages to which it may be entitled under all applicable provisions of the Code of other federal, state or local law;

7. To hear and determine all claims arising from the rejection of any executory contracts, including leases, and to consummate the rejection of executory contracts rejected hereunder or with respect to which an application for rejection was filed prior to the entry of the order of confirmation;

8. To liquidate damages in connection with any disputed, contingent or unliquidated claims;

9. To adjudicate all controversies concerning the classification or allowance of any claims or interest;

10.    To adjudicate all claims including amounts and issues relating to the validity of asserted security interests in any property of the estate including any property transferred hereunder or in any proceeds thereof;

11.    To adjudicate all matters affecting the entry of a final decree closing the Chapter 11 case;

12.    To adjudicate all disputes over defaults alleged under the Plan provisions;

13.    To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of this Chapter 11 case;

14.    To recover all assets and property of the estate wherever located; and

15.    To make such other as are necessary or appropriate to carry out the provisions of this Plan.


Respectfully Submitted,
**Anthony Giannasca**


Dated: January 7, 2013                    /s/ Anthony Giannasca